IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

F I L E D
Clerk
District Court

JUL 11 2014

for the Northern Mariana Islands
By_____
(Deputy Clerk)

|  |  |  |
|---|---|---|
| THE BOEING COMPANY and BOEING SERVICE COMPANY, | ) ) | CIV. NO. 13-00027 JMS |
|  | ) | ORDER GRANTING THE BOEING |
| Plaintiffs, | ) | COMPANY AND BOEING SERVICE |
|  | ) | COMPANY'S MOTION TO DISMISS |
| vs. | ) | LEO A. DALY'S COUNTERCLAIMS, |
|  | ) | DOC. NO. 23 |
| LEO A. DALY COMPANY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

## ORDER GRANTING THE BOEING COMPANY AND BOEING SERVICE COMPANY'S MOTION TO DISMISS LEO A. DALY'S COUNTERCLAIMS, DOC. NO. 23

## I.  INTRODUCTION

This dispute stems from services Defendant Leo A. Daly Company ("LAD") provided to Plaintiffs The Boeing Company and Boeing Service Company (collectively "Boeing") as a subcontractor under Boeing's contract with the Commonwealth Ports Authority ("CPA") for Boeing to procure the design and construction of capital improvements to the Saipan International Airport.  After the work was completed, it was discovered that the improvements did not meet seismic code requirements, and CPA brought actions against Boeing and LAD.  LAD refused to indemnify Boeing, and as a result, Boeing brought this action asserting

claims against LAD for breach of contract, indemnity, and other related claims.  In response, LAD asserted counterclaims against Boeing for equitable indemnity, equitable contribution, fraudulent misrepresentation, violation of the Consumer Protection Act, and declaratory relief.

Currently before the court is Boeing's Motion to Dismiss LAD's Counterclaims.  Based on the following, the court finds that LAD has failed to allege sufficient facts to assert plausible counterclaims and therefore GRANTS Boeing's Motion to Dismiss, with leave for LAD to amend as to certain claims.

## II. <u>BACKGROUND</u>

### A.    Factual Background

As alleged in LAD's Counterclaims, in February 2004, CPA entered into a contract with Boeing to design and construct improvements to Saipan International Airport.  Doc. No. 16, Counterclaim ¶ 7.  In March 2004, Boeing entered into several subcontracts regarding this project, including: (1) a subcontract with LAD for LAD to provide certain specified design and engineering work (the "Design Subcontract"), *id.* ¶ 9; (2) a subcontract with GPPC, Inc. for GPPC to provide construction services, *id.* ¶ 10; and (3) a subcontract with LAD to provide construction administration services.  *Id.* ¶ 11.

The Counterclaims assert that GPPC breached its obligation to perform all construction services in accordance with the design prepared by LAD and Boeing, and in conformity with the laws and regulations of the Commonwealth of the Northern Mariana Islands ("CNMI").  *Id.* ¶¶ 12-13.  According to LAD, its obligations under the Design Subcontract were merely to "assist," "support," and "collaborate" with Boeing in connection with Boeing's development of certain design and engineering elements of the project, and that the terms of the Design Subcontract provide that Boeing would review and analyze all proposed design and engineering elements of the project and "secure final approval" before construction proceeded.  *Id.* ¶¶ 15-16.  LAD further asserts that nothing in the terms of the Design Subcontract imposed any contractual indemnification obligation upon LAD or any duty to defend Boeing under any circumstances.  *Id.* ¶¶ 17-18.

CPA subsequently brought an action in United States District Court for the Northern Mariana Islands against Boeing for design and construction defects.  Doc. No. 1, Compl. ¶ 28.  Beginning in January 2012 through the present, Boeing made a series of allegedly false representations to LAD that LAD was under a contractual duty to indemnify Boeing and provide an unqualified and unreserved defense to Boeing.  *Id.* ¶ 19.  On April 9, 2013, CPA filed a complaint

in the Superior Court of the CNMI against LAD and GPPC arising out of the

contract between CPA and Boeing.  *Id.* ¶¶ 21-22.

**B.      Procedural Background**

On November 20, 2013, Boeing filed its Complaint.  Doc. No. 1.  On

March 5, 2014, LAD filed its Answer and Counterclaims, with counterclaims titled

(1) total equitable indemnity; (2) comparative equitable indemnity;

(3) equitable contribution; (4) violation of the consumer protection act;

(5) fraudulent misrepresentation; and (6) declaratory relief.  Doc. No. 16.

On March 26, 2014, Boeing filed its Motion to Dismiss.[1]  Doc. No.

23.  LAD filed an Opposition on April 10, 2014, Doc. No. 24, and Boeing filed a

Reply on April 17, 2014.  Doc. No. 26.  This action was subsequently assigned to

the undersigned.  Pursuant to Local Rule 7.1, the court determines the Motion to

Dismiss without a hearing.

---

[1]  Boeing argued, among other things, that LAD failed to timely file its Answer such that
all of the allegations in the Complaint should be deemed admitted.  In response, LAD filed a
Motion, in the Alternative, for Leave to Deem Answer and Counterclaims Filed.  Doc. No. 25.
Boeing does not oppose LAD's Motion.  *See* Doc. No. 27.  As a result, the court GRANTS
LAD's Motion and deems LAD's Answer and Counterclaims filed.

### III.  STANDARDS OF REVIEW

**A.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## B.      Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, a claimant must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id*. at 1548 (citation and quotation signals omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec.*

*Litig.*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## C.    Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d

1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*,

510 U.S. 517 (1994)).  In most cases, a motion to strike should not be granted

unless "the matter to be stricken clearly could have no possible bearing on the

subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d

1048, 1057 (N.D. Cal. 2004).

## IV.  ANALYSIS

Boeing argues that each of LAD's counterclaims fail to state a

plausible claim for relief and must be dismissed pursuant to Rules 12(b)(6), 9(b),

and/or 12(f).  The court addresses each of Boeing's arguments in turn.

### A.    Equitable Indemnity and Contribution (Counterclaims 1-3)

In support of its indemnity claims, LAD asserts that CPA's claims

against LAD were "proximately caused by the acts and omissions of Boeing;" thus,

if "CPA is able to successfully prove any of its claims," then LAD is entitled to

indemnification from Boeing.  Doc. No. 16, Counterclaims ¶¶ 24, 27.  *See also id.*

¶¶ 30, 33 (making similar allegations for its comparative equitable indemnity

claim).  As to its equitable contribution claim, LAD asserts that "if a court or jury

finds that LAD contributed in some fashion to the loss, injury, or other damage

alleged by CPA," then LAD is entitled to contribution from Boeing.  *Id.* ¶¶ 38, 39.

Boeing argues that these claims should be dismissed because, among other

reasons,[2] LAD has failed to allege a necessary element of an indemnity and/or

contribution claim -- that LAD has discharged a liability to CPA.  Doc. No. 23,

Mot. at 6.  Boeing argues that until LAD discharges a liability to CPA, it cannot

seek indemnity and contribution from Boeing.  The court agrees.

   The CNMI Supreme Court has yet to outline the elements of equitable

indemnification and contribution claims under CNMI law.  The elements are,

however, outlined in the Restatement (Third) of Torts (2000) (the "Restatement"),

which the CNMI Superior Court has followed on this very issue.  *See* Order

Granting Motion for Judgment on the Pleadings, *N. Mariana Housing Corp. v.

SSFM Int'l, Inc.*, No. 06-0123B, at 5-6 (N. Mar. I. Commw. Super. Ct. Apr. 9,

2012).  The Restatement provides that both indemnity and contribution claims

---

[2] Boeing also argues that LAD fails to assert sufficient facts to state a plausible claim for indemnity or contribution, especially in light of the contract language in the Design Subcontract outlining the parties' duties and providing that LAD must indemnify Boeing.  *See* Doc. No. 23, Mot. at 6; Doc. No. 26, Reply at 2.  The court recognizes that the parties dispute the scope of their obligations under the Design Subcontract, with both parties referencing language in the Design Subcontract.  The court also recognizes that the Design Subcontract includes an indemnity provision that runs to Boeing, and that LAD has offered no reasoned explanation -- either in its Counterclaims or the Opposition to the Motion to Dismiss -- explaining why this provision does not apply to the parties' dispute.  Although the court takes judicial notice of the Design Subcontract, *see Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), the parties present only brief arguments regarding their obligations under the Design Subcontract, and offer little assistance in interpreting the contract language.  Given that the Design Subcontract is over thirty pages long and there appears to be at least one additional contract between the parties, *see* Doc. No. 16 Counterclaim ¶ 11, at this time the court declines the parties' invitation to construe the Design Subcontract beyond noting that LAD must assert plausible claims in light of the contract language and its indemnity clause.

require a plaintiff to discharge a legal obligation owed to a third party before

asserting indemnity or contribution claims.  For example, § 22 of the Restatement,

titled "Indemnity," provides, in relevant part:

> (a) When two or more persons are or may be liable for
> the same harm and one of them discharges the liability of
> another in whole or in part by settlement or discharge of
> judgment, the person discharging the liability is entitled
> to recover indemnity in the amount paid to the plaintiff
> . . . .

Similarly, § 23 of the Restatement, titled "Contribution," provides, in relevant part:

> (a) When two or more persons are or may be liable for
> the same harm and one of them discharges the liability of
> another by settlement or discharge of judgment, the
> person discharging the liability is entitled to recover
> contribution from the other, unless the other previously
> had a valid settlement and release from the plaintiff.

The Reporters' Note to § 22 of the Restatement explains the rationale of requiring

a claimant to first discharge a liability owed to a third party before bringing a

claim:

> This Comment perpetuates Restatement Second, Torts
> § 886B(1), which provided that a person is entitled to
> indemnity from another only if he "discharges the
> liability of both."  The rationale for § 886B(1) was that
> the indemnitee provided a benefit to the indemnitor, so
> the indemnitee was entitled to restitution.  *See*
> Restatement Second, Torts § 886B(1) and Comment *c*.
> This was true only if the indemnitee provided the

> indemnitor with protection from liability. That rationale
> has not been affected by comparative responsibility. It
> would still be unfair under the basic principles of
> restitution to make a person pay noncontractual
> indemnity while he was still liable to the plaintiff. *See*
> Comment *f*. *See also* § 23 and Comment *b*
> (contribution). No case has permitted noncontractual
> indemnity against a person still liable to the plaintiff.

Relying on the Restatement, *Northern Mariana Housing Corp.*
determined that equitable indemnification and contribution claims require a
plaintiff to discharge a legal obligation owed to a third party before asserting a
claim. Order Granting Motion for Judgment on the Pleadings, No. 01-0123B, at 6-
7. In dismissing the defendant's cross claims for equitable indemnification and
contribution, *Northern Mariana Housing Corp.* explained that "a claim for
equitable indemnity sounds in equity and does not ripen until there has been a
discharge of liability[.]" *Id.* at 7.

This court believes that the CNMI Supreme Court would follow this
guidance and determine that indemnity and contribution claims require that the
claimant discharge a liability to a third party before bringing an indemnity or
contribution claim. Beyond *Northern Mariana Housing Corp.*, the CNMI Code
directs courts to the Restatements for guidance, *see* 7 CNMI Code ("CMC")
§ 3401, and other courts in this jurisdiction have relied on the Restatement in
determining CNMI law. *See, e.g.*, *Boeing Co. v. Leo A. Daly Co.*, 2014 WL

11

589470, at *2 (D. N. Mar. I. Feb. 14, 2014) (adopting the economic loss rule under the Restatement); *Hillbroom v. Israel*, 2012 WL 2168303, at *3 (D. N. Mar. I. Jan. 26, 2012) (adopting the Restatement's approach on comparative negligence by finding the doctrine of active negligence "inconsistent with the goals of comparative responsibility"); Order, *Cabrera v. Micronesian Resort, Inc.*, Civ. No. 11-0085, at *8 (N. Mar. I. Commw. Super. Ct. Mar. 20, 2014) (adopting the elements of negligent infliction of emotional distress set forth in the Restatement).

Further, other jurisdictions similarly require that a claimant first discharge a liability to a third party because such claim is not "ripe for judicial resolution if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 662 (9th Cir. 2002). *See also ACMG of La., Inc. v. Towers Perrin, Inc.*, 390 Fed. Appx. 936, 938 (11th Cir. 2010) (applying the Restatement to find that a claim for indemnity arises only when a party pays damages or extinguishes the liability of another); *Am. Int'l Ins. Co. of Puerto Rico v. Lampe GMBH*, 307 Fed. Appx. 645, 649 (3d Cir. 2009) (applying the Restatement's approach that an indemnity claim exists only when the claimant has "discharge[d] [a liability] by settlement or judgment"); *Arch Chem., Inc. v. Radiator Specialty Co.*, 727 F. Supp. 2d 997, 998 (D. Or. 2010) (referencing the element of indemnity

under Oregon law that plaintiff has to discharge a legal obligation owed to a third party); *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 277 (D. D.C. 2009) (applying the Restatement's approach that a noncontractual indemnity claim does not exist against a person still liable to a third party); *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008) (stating that indemnity and contribution claims are not ripe if they are contingent on a finding of liability on the underlying claim); *RLI Ins. Co. v. John H. Hampshire, Inc.*, 461 F. Supp. 2d 364, 369 (D. Md. 2006) (dismissing common-law indemnity/contribution claim as unripe because the claim "is predicated upon a future event which may never occur"); *Urological Surgery Prof'l Ass'n v. Fecteau Benefits Grp.*, 359 F. Supp. 2d 24, 26 (D. N.H. 2005) (dismissing indemnification and contribution claims brought in a separate action where the plaintiff's underlying liability has not yet been determined).

///

///

///

///

///

In opposition, LAD argues, among other things,[3] that the court should follow *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1037 (E.D. Cal. 2013), which found that under California law, a defendant may assert a cross-claim against a co-defendant for indemnity "before any defendant has been found liable," and that this position "comports with a common understanding of the nature and function of cross-complaints and indemnity." Doc. No. 24, LAD Opp'n at 3 (quoting *NuCal*, 918 F. Supp. 2d at 1042). *NuCal* addressed indemnity claims under California law;[4] this court believes that the CNMI Supreme Court would follow the Restatement pursuant to 7 CNMI § 3401, the CNMI Superior Court ruling, and the general rule.

In sum, the court finds that a claimant must discharge a legal obligation owed to a third party before bringing equitable indemnification and contribution claims. Turning to the allegations of LAD's counterclaims, LAD did

---

[3] LAD also argues that if the court dismisses LAD's indemnity and contribution counterclaims against Boeing, "dismissal of Boeing's express and implied indemnity claims against LAD would also be required on the same grounds asserted by Boeing in its Motion, as Boeing has not alleged that it has discharged any legal obligation to a third-party." Doc. No. 24, Opp'n at 4 n.1. A challenge to Boeing's claims, however, is not before the court at this time. And in any event, it appears that Boeing's claims differ from those of LAD because Boeing is asserting a contractual indemnity claim and has already settled with CPA. *See* Doc. No. 1, Compl. at 11-12; Order Granting Motion for Judgment on the Pleadings, *N. Mariana Housing Corp.*, No. 06-0123 at 5-7.

[4] The court rejects LAD's citations to other cases for this same reason.

not plead that it discharged Boeing's legal obligation to CPA and thus, fails to state a plausible claim for indemnification or contribution under CNMI law.

The court therefore DISMISSES LAD's equitable indemnification and contribution counterclaims.  Because granting leave to amend would be futile at this time, this dismissal is without leave to amend, but without prejudice for LAD to seek leave to amend at a later time (or file a new suit) should LAD discharge a legal obligation to CPA.

**B.      Fraudulent Misrepresentation (Counterclaim 5)**

LAD asserts that "[b]eginning on or about January 4, 2012, continuing to the present, through its in house counsel and its attorneys, Boeing made a series of fraudulent misrepresentations of fact and law to LAD to the effect that the Design Subcontract between the parties contained an enforceable indemnity clause, and that LAD was under a contractual duty to provide an 'unqualified' and 'unreserved' defense to Boeing in connection with CPA's claims."  Doc. No. 16, Counterclaim ¶ 52.  LAD further asserts that "Boeing knew that the truth was not as its attorneys explicitly and repeatedly represented to LAD," and that "Boeing made these misrepresentations for the purpose of inducing LAD to act in reliance upon them."  *Id.* ¶¶ 53-54.  As a result of  Boeing's assertions, LAD states that it "justifiably relied" on the "truth of Boeing's representation," which was a

"substantial factor" in LAD's decision to hire counsel in responding to Boeing.  *Id.*
¶ 55.

Boeing argues that these allegations fail to state a plausible fraudulent
misrepresentation claim.  Doc. No. 23, Mot. at 8.  The court agrees.

In general, the elements of a fraud claim are "(1) a material, false
misrepresentation by the defendant; (2) the defendant's knowledge of its falsity;
(3) the defendant's intent that the plaintiff act reasonably upon it; and (4) the
plaintiff's justifiable and detrimental reliance upon the misrepresentation."  Order
Granting in Part and Denying in Part Defendant Leo A. Daly Company's Motion
for Judgment on the Pleadings, *Commonwealth Ports Auth. v. Leo A. Daly &
GPPC, Inc.*, Civ. No. 13-0085 (N. Mar. I. Commw. Super. Ct. Jan. 17, 2014)
(quoting *Syed v. Mobil Oil Mariana Islands, Inc.*, 2012 MP 20 ¶ 44) (citations
omitted); *see also Doe v. Gangland Prods.*, 730 F.3d 946, 960 (9th Cir. 2013)
(stating elements of fraud claim under California law).  A claimant may not simply
allege these basic elements; rather, fraud claims are subject to the more
particularized pleading requirements of Rule 9(b), and require a claimant to allege
the circumstances constituting "fraud" such as the time, place, and nature of the
alleged fraud.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48.

Although LAD alleged generally that Boeing's in house counsel and attorneys made statements starting January 2012 regarding LAD's obligation to indemnify LAD and that LAD relied on them, these allegations are not pled with the particularity required by Rule 9(b).  For example, LAD fails to allege (1) what specific dates LAD spoke with Boeing, (2) which particular representative spoke with LAD, (3) how these statements by Boeing were communicated to LAD, and (4) how LAD had justifiably and detrimentally relied on these alleged misrepresentations.

And beyond the basic need for LAD to comply with Rule 9(b), LAD has failed to allege a plausible basis for several elements of its fraud claim.  For example, LAD alleges no facts explaining why, in the face of the Design Subcontract's provision that Boeing is to be indemnified, that Boeing's assertions regarding indemnify are false.  The explicit provision in the Design Subcontract seems to contradict LAD's assertions that it has been defrauded by Boeing.

LAD also fails to plausibly allege that it detrimentally relied on Boeing's assertions that LAD had an obligation to indemnify Boeing.  The facts pled do not demonstrate detrimental reliance.  Before the court is a commercial dispute between two sophisticated parties who entered into a Design Subcontract in which LAD agreed to design and construct an additional terminal to the Saipan

17

International Airport.  LAD, being a sophisticated party to this suit, has not

provided the court with a sufficient basis as to how and why it relied on statements

of Boeing, an adverse party, and not form its own opinion as to the truth behind

Boeing's statements.  *See* Restatement (Second) of Torts § 542 (1977).

   And as the Counterclaims make clear, LAD has rejected Boeing's

assertions and refused to indemnify Boeing.  As a result, based on the facts alleged,

LAD's refusing to accept the representation as true (as LAD did) and hiring an

attorney in response to Boeing's demands is not justifiable reliance.  *See Fitzgerald*

*v. Am. Sav. Bank, F.S.B.*, 2012 WL 850776, at *6 (D. Haw. Mar. 13, 2012) (finding

that accepting Plaintiff's pleading that he had to hire legal counsel and file for

bankruptcy as detrimental reliance "would open the floodgates to a vast array of

fraud claims").  Instead, LAD's actions in hiring counsel seem to belie any

reliance, and instead show defiance.  *See Kimmel v. Phelan Hallinan & Schmieg,*

*PC*, 847 F. Supp. 2d 753, 771 (E.D. Pa. 2012) (concluding that hiring lawyers after

the defendants' alleged false misrepresentations is the "'opposite of reliance; it's

defiance'").  LAD's counsel is fighting Boeing, a far cry from proof of reliance.

Accordingly, the court DISMISSES LAD's fraudulent misrepresentation claim with leave to amend, if possible, to allege sufficient facts to state a plausible claim for relief under Rule 9(b).

## C.      The Consumer Protection Act (Counterclaim 4)

LAD's allegations in support of its claim pursuant to the Consumer Protection Act, 4 CMC § 5105 (the "Act"), mirror those alleged for its fraud claim. In particular, LAD asserts that Boeing violated the Act by "repeatedly representing," with "no reasonable or good faith factual or legal basis," that Boeing was entitled to indemnity and an unreserved/unqualified defense from LAD.  Doc. No. 16, Counterclaim  ¶ 47(a), (b).  LAD further asserts that Boeing "actually knew or reasonably should have known that the Design Subcontract" contained no valid indemnity obligation or defense.  *Id.* ¶¶ 48, 49.

Boeing argues that this claim fails to assert a plausible claim for all the same reasons as LAD's fraud claim, and for the additional reason that LAD failed to allege a necessary element for a claim under the Act -- "that the parties attempted to or engaged in any commerce related to the alleged misrepresentation." Doc. No. 23, Mot. at 12.  The court agrees.

This claim is based on fraud, and as a result is subject to the heightened pleading requirements of Rule 9(b).  *See Vess*, 317 F.3d at 1103 ("Rule

9(b) applies where a claim is based on 'a unified course of fraudulent conduct,' even if the word 'fraud' is not used."). Thus, the court's analysis dismissing LAD's fraud claim applies equally here.

And beyond the basic fraud elements, this claim requires an additional element. In particular, the Act declares unlawful a number of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[,]" 4 CMC § 5105, and LAD asserts that Boeing violated § 5105(l) ("[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding . . ."), and § 5105(bb) ("[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law"). Thus, the Act requires two elements: (1) an unlawful act by Boeing (in this case, defined by (l) and (bb)), and (2) that those unlawful acts occurred in the conduct of trade or commerce.

The terms "trade" and "commerce" do not encompass just any act between two parties. Rather, 4 CMC § 5104(b) defines "commerce" and "trade" as

> the sale, advertising, offering for sale, contracting for sale, exchange, distribution for consideration, or solicitation for purchase to the general public of any goods or other property, real, personal, or tangible, or of any service, including any lottery, game of chance, or entertainment, or any other article, commodity, or thing of value, wherever situated or performed.

That the transaction at issue be "in the conduct of trade or commerce" is further confirmed by § 5102(a)(1), which provides that "[t]he public interest requires that consumers be protected from abuses in commerce which deprive them of the full value and benefits of their purchases of goods and services or which deceive them regarding the availability and nature of goods or services for sale."

The basis of LAD's claims is that Boeing falsely asserted that it was entitled to indemnity and an unqualified defense from LAD in conjunction with CPA's lawsuit against Boeing.  These demands are not related to trade or commerce -- LAD has not alleged that Boeing made these statements in seeking a business relationship with LAD and/or that the alleged misstatements made by Boeing occurred during a time when LAD was a consumer in the conduct of trade or commerce.  Rather, Boeing made these demands *after* LAD had provided services to Boeing, and in defending itself in the litigation with CPA.  *See Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010) (stating that pre-suit demand letters have "no connection or nexus to trade or commerce"); *Dalesandro v. Longs Drugs Stores Cal., Inc.*, 383 F. Supp. 2d 1244, 1250-51 (D. Haw. 2005) (concluding that alleged misstatements that occur in the context of preparing for litigation are not considered in the conduct of trade or commerce); *cf. Isla Fin. Servs. v. Sablan*, 2001 WL 34883530, at *4 (N. Mar. I.

Dec. 14, 2001) (finding that the statements defendant made to plaintiff to induce the plaintiff to sign a promissory note occurred in the conduct of commerce.); *N. Mariana Housing Corp.*, No. 06-0123 at 11-12 (citing *Reyes v. Ebetuer*, 1992 WL 62773, at *6 (N. Mar. I. Jan. 29, 1992) (finding the misrepresentation of the quality of construction occurred in the conduct of commerce)).

In opposition, LAD argues that its counterclaim must be sufficient because Boeing is alleging a claim pursuant to the Act against LAD for LAD's failure to indemnity Boeing.  Boeing's claims, however, are not at issue in the present Motion, and are irrelevant in determining whether LAD had asserted a plausible claim for relief.[5]

The court DISMISSES LAD's Consumer Protection Act counterclaim.  Because granting leave to amend would be futile, this dismissal is without leave to amend.

## D.   **Declaratory Relief (Counterclaim 6)**

In support of its claim for declaratory relief, LAD alleges:

An actual controversy has arisen and now exists between LAD and Boeing, concerning the parties' respective

---

[5] In any event, LAD misstates Boeing's claims, which are based on the parties' contractual obligations that were entered into in a commercial transaction.  *See, e.g.*, Doc. No. 1, Compl. ¶¶ 60-61; *see also Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 2009 WL 1444410, at *3 (M. D. Fla. May 21, 2009) (concluding that the indemnity and defense provisions in the agreements were "services [that] clearly constitute 'trade or commerce'").

rights and duties under the Design Subcontract . . . in
that LAD contends that Boeing is legally responsible, in
whole or in part, for any losses claimed by CPA in
connection with the Project.  And LAD is informed and
believes and on that basis alleges that Boeing denies any
such responsibility.

Accordingly, a declaration of the rights, responsibilities,
and obligations as between LAD and Boeing is essential
and appropriate to determine the parties' respective
obligations in connection with the underlying demands
by CPA, and to determine the contractual obligations of
the parties as to any costs and expenses associated
therewith.

Doc. No. 16, Counterclaims ¶¶ 59-60.

Boeing argues that this claim should be dismissed because (1) to the

extent that LAD seeks a declaration that Boeing must indemnify LAD, LAD fails

to assert a plausible claim in light of the indemnity provision in the Design

Subcontract; and (2) to the extent that LAD is asking the court to declare that LAD

is not responsible for indemnifying Boeing, such claim is redundant of LAD's

defenses.  The court agrees.

To the extent that LAD is seeking a declaration that Boeing is

responsible for any judgment CPA obtains against LAD, LAD fails to state a

plausible claim of relief under Rule 12(b)(6).  In light of the language in the Design

Subcontract providing indemnification for Boeing, LAD has not pled any plausible

basis as to how or why Boeing is nonetheless legally responsible for the losses

claimed by CPA against LAD.  The court, accordingly, DISMISSES this claim, with leave to amend.

And to the extent that LAD seeks a declaration that LAD has no obligation to indemnify Boeing, such claim is redundant and therefore subject to dismissal pursuant to Rule 12(f).  In particular, the court may strike redundant matters from pleadings, *see* Fed. R. Civ. P. 12(f), and courts have exercised their discretion in striking counterclaims that are mere "mirror images" and/or redundant of the complaint and/or affirmative defenses.  *See Stickrath v. Globalstar, Inc*., 2008 WL 2050990, at *3 (N.D. Cal. Dec. 3, 2008) (stating that courts "have used that discretion to dismiss counterclaims under Fed. Rule Civ. Pro. 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses"); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008) ("Federal Courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment.").  Striking a counterclaim should be done, however, only where the counterclaim truly "serves no 'useful purpose'" beyond the claims in the complaint and/or affirmative defenses pled.  *Globalstar*, 2008 WL 2050990, at *5 (quoting *Pettrey v. Enter. Title Agency, Inc*., 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006)).

LAD's request for declaratory relief for non-liability to Boeing is the same as LAD's defenses pled in its Answer that "LAD is not legally obligated to defend or indemnify Boeing, either expressly or impliedly," Doc. No. 16, Eighth Aff. Defense.  It is also the same issue raised in Boeing's Complaint seeking indemnity from LAD.  *See* Doc. No. 1.  As a result, LAD's request for declaratory relief serves no independent purpose and the court therefore exercises its discretion to strike it pursuant to Rule 12(f).  *See, e.g.*, *Cincinnati Specialty, Underwriters Ins. Co. v. DMH Holdings, LLC*, 2013 WL 683493, at *5 (N.D. Ind. Feb. 22, 2013) (striking declaratory relief counterclaim as redundant of affirmative defenses); *Tri-City Healthcare Dist. v. HC Tri-City I, LLC*, 2012 WL 4119224, at *2 (S.D. Cal. Sept. 18, 2012) (same); *Marine Grp. v. Marine Travelift, Inc.*, 2012 WL 2683130, at *1 (S.D. Cal. July 6, 2012) (similar); *Apple Inc. v. Samsung Elec. Co.*, 2011 WL 4948567, at *10 (N.D. Cal. Oct. 18, 2011) (striking declaratory judgment counterclaim as repetitive of affirmative defense because it serves "no useful purpose, separate and apart from the 'mirror image' affirmative defenses"); *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, 2010 WL 2219179, at *8 (S.D. Tex. May 28, 2010) (striking declaratory judgment counterclaim as "merely restat[ing] affirmative defenses without seeking different relief or raising different issues").

Accordingly, the court DISMISSES LAD's counterclaim for declaratory relief, with leave for LAD to amend as to its claim seeking a declaration that Boeing must indemnify LAD.

## V.  CONCLUSION

Based on the above, the court GRANTS Boeing's Motion to Dismiss LAD's counterclaims.  LAD is granted leave to file an amended counterclaim consistent with this Order by **August 11, 2014.**  If LAD fails to file an Amended Counterclaim, this action will proceed as to Boeing's claims against LAD.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 10, 2014.


 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge




*The Boeing Co. et al. v. Leo A. Daly Co.*, Civ. No. 13-00027 JMS, Order Granting the Boeing Company and Boeing Service Company's Motion to Dismiss Leo A. Daly's Counterclaims, Doc. No. 23